Order, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered December 27, 2012, which granted defendants’ motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion denied.
Plaintiff, born April 25, 2002, suffers from mental retardation and cerebral palsy. She is unable to walk and is dependent on others for everything.
On December 22, 2007, plaintiff was sleeping in the bottom bed of a bunk bed in the apartment in which she resided when her face and hand came into contact with a baseboard radiator for an unknown length of time and were severely burned. Plaintiff, by her mother, commenced this action against the landlord and managing agents on the theory that the occurrence was caused by their negligence.
Defendants moved for summary judgment, arguing that they did not have a duty to provide covers for baseboard radiators. Relying on the Court of Appeals’ decision in Rivera v Nelson Realty, LLC (7 3NY3d 530 [2006]), Supreme Court granted the motion, finding, among other things, that “[t]he fact that defective radiator covers were removed from plaintiffs apartment by the superintendent and not replaced does not create a duty to provide radiator covers when no such duty to provide radiator covers existed at that time.” We now reverse.
In Rivera, a three-year-old child was injured when he climbed onto an uncovered radiator in his parents’ bedroom. Before the accident, the parents had told the defendants that the radiators were dangerous to their young children, but the defendants had refused their requests for radiator covers due to the expense. The Court of Appeals held that “the landlord of a home where children live does not have a common-law or other duty to provide or install radiator covers” (7 3STY3d at 532 [emphasis added]). In so ruling, the Court reasoned that “[Basso v Miller, 40 NY2d 233 (1976)] did not abrogate the common-law rule that, with some exceptions, a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract” (7 NY3d at 534). The Court found that no duty to repair arose under Multiple Dwelling Law § 78, which requires a landlord to maintain its premises in a safe condition, because *461 the plaintiffs did not claim that the radiator needed repair or was defective in any way. However, there are numerous factors which distinguish this case from Rivera.
Unlike Rivera, plaintiff was not injured on a freestanding radiator. Rather, she was injured on a baseboard heating unit, comprised of thin strips of metal or fins attached to a pipe, which ran along a length of wall. While there is no indication that the radiator in Rivera was ever covered or intended to be covered, in this case, when shown a photograph of the subject baseboard heating unit at his deposition, the building superintendent testified that the exposed elements were supposed to be covered and that the cover snapped into the L-shaped bracket depicted in the photograph.
Further, plaintiff alleges that the dangerous condition was caused by defendants’ actions, rather than omissions, and that the radiator was defective and in need of repair. Plaintiffs bill of particulars alleges that “[pjlaintiff was burned by an uncovered baseboard heating unit that Defendant removed prior to the accident but never replaced.” Plaintiffs supplemental bill of particulars alleges that the uncovered baseboard heating unit existed for at least six months before the accident “and was created by the Defendants by removing the covers.”
In her affidavit in opposition to defendants’ motion, plaintiff’s mother explained that when she moved into the apartment, the baseboard radiators “came with covers” and that she asked the building superintendent to remove the one from plaintiff’s bedroom because it was “rusty, bent and sharp in places, and on a few occasions scratched the legs of [her] children.” As a result, the superintendent removed the radiator cover in the spring or summer of 2007 “to make the repair,” stating that he would fix and reinstall the cover “within a couple of days.”
The mother further stated that after the cover was removed, a hazardous condition continued to exist in that “[t]he exposed radiator element under the cover was itself sharp in places, so [she] told the super that [she] needed the cover back right away so [plaintiff] and [her] other children did not injure themselves.” The mother claimed that during the approximately six months between the removal of the cover and the accident, she spoke with the superintendent and the management companies multiple times and that on each occasion they assured her that the covers would be reinstalled within a few days. When they failed to reinstall the covers, she complained to the City of New York Department of Housing Preservation and Development (HPD). Plaintiff submitted an affidavit by her brother that corroborated her mother’s account of the removal of the radiator *462 cover, her complaints to defendants, and defendants’ promises to reinstall the cover. At his examination before trial, the brother testified that the building took the cover off because it was rusty and sharp and there was a leak in the house.
In addition to the foregoing, the lease states that “Owner will provide . . . heat as required by the law [and], repairs to the apartment, as required by law.” The landlord also expressly retained the right to reenter the apartment to make repairs. Unlike the plaintiff in Rivera, plaintiff submitted evidence of a violation of Administrative Code of the City of New York § 27-2005 (a), which requires that “[t]he owner of a multiple dwelling shall keep the premises in good repair,” based on an inspection of the baseboard heating units that HPD conducted approximately two months before the accident. Plaintiffs bill of particulars alleges that, on October 13, 2007, HPD inspected the apartment and sent a notice of violation to defendants stating that the building was in violation for their failure to replace the missing baseboard covers in the entire apartment. A violation summary report prepared by HPD indicates that, on October 16, 2007, a notice of violation was issued to the building that stated, “§ 27-2005 ADM code replace with new the missing cover to baseboard heaters in the entire apartment located at apt 3C.”
By virtue of the foregoing, plaintiff raised issues of fact whether defendants, through a course of conduct, assumed a duty to cover the baseboard heating unit (see generally Volpe v Hudson View Assoc., LLC, 109 AD3d 814 [2d Dept 2013]), whether defendants created an unsafe condition by removing the baseboard heating unit’s cover and leaving the unit uncovered, and whether the uncovered unit needed repairs or was defective in any way. On the full record before us, the alleged differences between the mother’s deposition testimony and her affidavit in opposition to defendants’ motion for summary judgment merely serve to raise questions of fact (see Bosshart v Pryce, 276 AD2d 314 [1st Dept 2000]). Concur— Andrias, J.P, Acosta, Saxe, Renwick and Manzanet-Daniels, JJ.